of Missouri, Wayne Gerling v. Matthew Waite. Very well, Mr. Bertels, we'll hear from you first. May it please the court. Just a second, Mr. Weinberg, you could put your microphone on mute until you're arguing, if you would please. You may proceed, Mr. Bertels. Thank you, Your Honor. May it please the court. I represent Appellant Matthew Waite in a 1983 lawsuit that was filed against him by a patholy Wayne Gerling. This matter arises out of an incident that occurred in a small town of Herman, Missouri, back on November 18th of 2012. Mr. Gerling was tased and then subsequently arrested by my client, Mr. Waite. A civil lawsuit ensued. We filed a motion for summary judgment asserting that Matthew Waite was entitled to qualified immunity on both the excessive force claim for the use of the taser and for the false arrest claim for the charge of resisting arrest. Those were denied by the district court. That finding was an error because Officer Matthew Waite is entitled to qualified immunity because the force used on Mr. Gerling was objectively reasonable due to Mr. Gerling's own actions in interfering with Officer Waite's investigation and then actively taking steps to resist arrest. The force at issue was only used after Mr. Gerling ignored multiple instructions from Officer Waite and then attempted, I'm sorry, pulled away from Officer Waite and then proceeded to enter into a residence where two unknown individuals were located for purposes that were not clear to Officer Waite at the time. The undisputed facts show that Mr. Gerling was not a compliant individual in this situation and it was not clearly established in November of 2012 that officers such as Officer Waite was forbidden from using a taser to effectuate an arrest on a suspect in this type of situation. I refer to this court's decision in Rudley v. Little Rock Police Department where in that case the plaintiff could not identify a robust consensus of cases that placed the excessive force question beyond debate at the time of the alleged violation. That is the same circumstance we have here. In order for qualified immunity to not apply on the excessive force claim, there must be existing precedent from this circuit placing the statutory or constitutional question confronted by Officer Waite in this case beyond debate. That is not the case here. Let me ask you this, Mr. Bertels. Is it relevant to the excessive force claim whether the officer was lawfully or unlawfully in the home? For the excessive force claim, no, Your Honor, because he was following the individual into the home and only deployed the taser after Mr. Gerling pulled away and proceeded into the residence. But suppose that the officer impermissibly entered the residence under the Fourth Amendment without a warrant. Is that relevant then to whether he's permitted to continue in and use force? I think it would depend on the circumstances, Your Honor. Maybe I'm misunderstanding your question, so I apologize. Are you saying that the individual was always in the home? Right. As I understood the record here, Gerling contends that although he stepped out at one point to point at the truck, he was inside the threshold when the officer asserted that he was going to jail and attempted to effect an arrest, and I thought the district court said that was a disputed fact question. So if we take as an assumption for a moment that the man was in the house when the officer tried to effect the arrest, I'm asking whether it's relevant to the excessive force claim that you started out with that the officer, on this assumption, was unlawfully in the house pursuing the man. I think it could be relevant to the excessive force claim if he was always in the house. However, that's not the hypothetical situation we have here as the video, as well as Mr. Gerling, some of Mr. Gerling's testimony anyway, indicates that he was either out on the porch or in the doorway, which is a public area, so he can't flee from a public area to inside his residence to avoid pursuit by the officer and therefore has no right to not be subjected to excessive force if the circumstance permitted, obviously. Well, that would be Santana, but I thought the judge said it's a disputed fact question here, and you're relying on the video, I guess, on a Scott v. Harris theory, that the video clearly refutes the district court's view that there's a dispute. But I was just taking for a moment the assumption that we thought it was disputed about whether he was in the house, whether that might affect the excessive force analysis. I think it possibly could, Your Honor. I think I have to concede that. If he was always in the house, then yes, it would affect it. And you've touched on something I wanted to address. It is our contention that the district court erred in not relying on the video, which if you watch the video, which admittedly is dark and not of the best quality, but the video does show Mr. Gerling stepping out of the doorway for a period of time. It then shows him retreating back and then retreating back again to close the door. And Mr. Gerling testified that when Officer Waite reached out to tell him he was under arrest, I'm sorry, tell him that he was going to jail for the second time and grabbed his arm, that Officer Waite was standing on the porch. It would not be possible for him to reach out and grab Mr. Gerling if he was not at least in the doorway of his home. And if you couple that testimony with the video, there is no way for Mr. Gerling to be in his house because after his arm is grabbed and he jerks away, he then backs up and attempts to shut his door. That is clear on the video. He was in the doorway up until that moment, at least. Mr. Gerling also says there were other... Hold on a second. If a person is, when you say in the doorway, I want to understand what you mean. If the door is open, but the person is standing inside the home, that is, you know, before the threshold of the door, are you calling that in the doorway or are you saying that's in the home? If he's in the threshold, that is not part of the doorway, Your Honor, would be my position. I'm not sure I understand. If the man is inside the home, he's not up to the place where the door closes, you know, where the threshold, what I would call the threshold. If he's behind the threshold... He's in his home at that point. He's in his home, all right. Well, isn't it possible on this video that the man could have stood there and then had to back up from there to close the door because he had to get out of the way of the door in order to close it? No, Your Honor, if you watch the video in its entirety, you can see Mr. Gerling backing up twice. He backs up first and then that's when Officer Waite grabbed Mr. Gerling's arm. Then he backs up again. I think at that point he has crossed threshold when he backs up that second time. But the first time, if you watch the video closely, you can see that he still has not crossed the threshold at that point. Admittedly, it is a little bizarre, but when you watch it, you can see when you read along with the testimony of what they say occurred, that he did not make it inside the threshold until after Officer Waite grabbed his arm and said, you're going to jail. Yeah. Okay. I understand your position is the arm grabbing happened when Gerling was on the porch or at least in the Santana threshold. Correct. But the district court thought that was a disputed fact. So I guess we're going to have to sort that out. Yeah, they did say it was a disputed fact. It's our position that was in error due to the video. Mr. Counselor, why wasn't Mr. Gerling entitled to close the door? Because at that point he was fleeing from an arrest and was going into the home for purposes that were unknown for Officer Waite at that time. So Officer Waite was allowed to pursue him at that point. The point he jerked away and retreated back into the house, I should say. On a misdemeanor warrant. Misdemeanor offense, Your Honor. I don't believe there was one. And this court has held it not. In your reply brief, you said, okay, Gerling can be seen in the video backing up and attempting to shut the wood door. I recall that old English case. And I'm sure Judge Kaltman and Judge Shepard will give me the citation where the judge said, talked about the Whitman's rough house. The wind may blow through, the storm may come, but the King of England may not enter. I don't know why I'm saying that. It seems to me as a ridiculous proposition that Mr. Waite, who didn't have time to show up at the hearing, Officer Waite was in such fear of his life that he had to come in there. And I suppose your answer is, what did Justice Holmes say? Detached reflection cannot be demanded in the presence of an unlifted knife. Now, I don't know if you're arguing that Mr. Gerling had an uplifted knife in his hand. Are you saying that? No, I'm saying that a reasonable six-year-old child there, maybe the child had a knife. And what our position is, Your Honor, is that at the time, the evidence in the record is that Officer Waite knew there were two individuals. There is no evidence in the record that he realized it was a child. But more to the point, he doesn't know what Mr. Gerling is going to do. Now, with 20-20 hindsight, it probably appears that Mr. Gerling was not going to do anything and there was a child. But as this court has said many times, we don't look at these circumstances in 20-20 hindsight. We have to put ourselves in the position of the officer at the time. He's got an individual jerking away, going into the home for reasons that that officer cannot know what's going to happen at that time. That officer needs to control the situation. He drew his taser, told Mr. Waite again to stop. What situation? I'm sorry? He wanted to arrest him on an ordinance violation? Well, at that point that he placed him under arrest, he was investigating the issuance of a traffic ticket to which Mr. Gerling still had not provided any information for Mr. Waite. I'm sorry, for Officer Waite to complete that ticket. Officer Waite did testify that he placed Mr. Gerling under arrest the first time he told him he was going to jail for interfering with his investigation into that traffic ticket. That's a statement of facts on page 14 of our brief. Did Waite arrest Gerling because Gerling wouldn't give his driver's license? The actual tickets were issued for illegal parking and resisting arrest. Why couldn't Waite give him a ticket without a driver's license? Haven't you ever received a parking ticket without the meter maid getting your driver's license? Because the truck that Mr. Gerling was driving was registered to his trucking company, not himself. So Officer Waite did not know who the operator of the truck was. He only knew the owner. So according to there's testimony from the Herman corporate rep on that, that tickets are to be issued to the driver of the vehicle, not the owner. So they needed to ascertain who the operator. I'm sorry, I said driver. I should say operator. Officer Waite needed to ascertain who the operator of the vehicle was. Now, where did that come from? What did you just say? Was that an opinion that the officer had from somebody? I believe it came from the corporate rep depot of the city of Herman. I don't know off the top of my head where in the record that is, though, Your Honor. I'll be honest. Well, how would the driver's license tend to show whether Gerling was the operator of the truck? I thought Gerling already said it was his truck. Gerling said it was his truck, so he knew it was the operator. But at that point, he needs to identify him. He didn't need a driver's license. He did ask Mr. Gerling for his name as well, and Mr. Gerling didn't give him that. He didn't need the driver license per se. He just needed a name. If Mr. Gerling had provided his name, I think Mr. Officer Waite would have filled out the ticket and gone on his way. Well, if he'd asked him for his name, then he might have received it. I don't know. I thought he asked him for his driver's license, and Gerling declined to provide it, and then Waite said he went to jail. He did ask him for the driver's license, Your Honor. I don't know that it progressed far enough. I believe there was testimony that he could have asked him for his name, and Officer Waite agreed that was a possibility as well. Maybe that's what I'm thinking of. I see that I'm getting close to the end of my time. Maybe I'll reserve the rest for rebuttal, if that's okay, Your Honor. Did Judge Shepard have a question? Oh, I'm sorry. He answered it. All right. Very well. You may reserve the balance, and we'll hear from Mr. Weinberg. Thank you very much, Your Honors. Jonathan Weinberg for Applee, Wayne Gerling. May it please the Court. It is clearly established that the Fourth Amendment does not permit the sort of government intrusion alleged in this case. To be plain, we have here an officer of the state walking onto private property without a warrant and demanding identification papers from the homeowner. When the homeowner lawfully declines, the officer demands that he exit the home so that he may be arrested without a warrant. When lawfully refused again, the officer storms the house, fires a taser into the homeowner's chest in front of his 90-year-old grandson, handcuffs him, and hauls him to jail. And why did the officer take such aggressive action? He suspected a parking infraction. Your Honors, this is not the type of thing the Constitution permits. First, this was a false arrest for two independent reasons. Number one, the officer cannot arrest a citizen at home without a warrant or exited circumstances. And number two, an officer cannot arrest a citizen without probable cause. Second, this was an excessive use of force because an officer cannot taser a citizen for exercising his constitutional right to simply stay home. Officer Waite's counterarguments, as you just heard, are primarily fact disputes about whether or not Mr. Gerling was in his house or outside of his house. But of course, this court does not review fact disputes on interlocutory appeal. Accordingly, it should simply affirm. I'd like to speak first to the false arrest count and specifically to the theory about a warrantless in-home arrest. It's well established and undisputed in this case that an in-home arrest must be supported by a warrant or exigent circumstances. And it's admitted in this case that there was no warrant and that there was no exigent circumstances. Officer Waite testified that he perceived no exigency. That's an Appendix 498. And there's no argument in his briefing to this court that there was such an exigency. So that is waived. So the only question for this false arrest charge is simply was Mr. Gerling in his home or was he not? That's a fact dispute. As your honors have already noted, district court found explicitly that this is a genuine dispute of fact that should go to the jury. We see that in Appendix 573. Quote, the court found a genuine issue of material fact as to Gerling's location when the incident occurred. And as your honors are aware, there's no jurisdiction to review that specific determination. The rule being that a rejection of qualified immunity defense is not appealable when the district court merely determines that the record presents a genuine issue of fact for trial. Based on that alone, the district court's decision on false arrest should simply be affirmed. The only counter argument that we have on the other side is that because of this videotape of the body cam, the court should invoke the Scott exception that has been interpreted by this court to mean that if there's video evidence that blatantly contradicts and that's the quote from Scott, blatantly contradicts the facts alleged by Mr. Gerling that he was inside of his house. Then the court can look to that and determine whether or not there's a constitutional violation under those facts. I think it's clearly inapplicable in this case. I'm sure that your honors have seen the video. It's very sketchy and does not show things very clearly. There's a lot of evidence on the other side showing that Mr. Gerling was indeed inside of his house. Mr. Gerling testified to that effect at Appendix 236. Mr. McCubbin, another eyewitness, testified to the same effect at Appendix 363. McCubbin Jr. testified to the same effect, Appendix 336. An officer waiting for his part says he just couldn't remember whether or not Mr. Gerling was inside the house or out. Given all this, it's clearly correct that there is a genuine factual dispute about where Mr. Gerling was standing. The district court so held, this court should affirm and remain balanced for a trial on the issue. Let me ask you a question on that, what you're calling a false arrest claim, if I may. Sure. Count two of the complaint alleges arrest without probable cause in violation of the Fourth Amendment. That's the only arrest claim that I see in the complaint. The claim you seem to be advancing now is not arrest without probable cause, but unlawful arrest because of unlawful entry to the home. What do we do with the fact that that apparently was not pleaded? It was argued below and whether or not the specific heading called it probable cause does not suggest that this issue was not before the court below. It certainly was squarely presented to the court and the court ruled on it. That said, we also do have a separate count of no probable cause as being a separate reason why it is that this false arrest charge. I understand that, but if you lose on that because there was arguable probable cause to arrest for the parking violation, even though it was a misdemeanor and arrest probably wasn't necessary, that's not really the issue. If there's arguable probable cause on that, you'd be down to the entry theory. And that's why I'm trying to understand whether it's in the case. You say it was presented to the district court. You think that's sufficient if it's not in the complaint? I believe that it was the category of a false arrest should capture what had happened here and the complaint pleads the requisite facts. Those facts and theories were presented squarely to the district court. The district court considered them and ruled on them. So I think it's squarely before this court as an appeal issue. Dealing with the, if that is to your satisfaction, dealing with the parking infraction probable cause issue, I'm not sure if you'd like me to discuss that. But in case the court doesn't see the warrantless in-home arrest as a winning issue, certainly I think that there is a strong argument that there was no probable cause otherwise. We got into this in our briefing, pages 40 to 46, about why it is that Officer Waite had no probable cause to believe even a parking infraction had been committed. He had simply, to say it quickly, he simply had never checked whether or not the street on which the truck was parked was zoned commercial or residential. And so at the time, he had no idea whether or not the truck was actually parked illegally. There is a misstatement, I think, in the briefing from the other side where they say that their Officer Waite's commanding officer had told him that this was a residential street and the truck was parked illegally. That's not true. At Appendix 199 and Appendix 268, we have testimony from the commanding officer saying that he did not say that. He left it up to Officer Waite to determine whether or not there was any kind of parking infraction. Officer Waite could have, or should have, at least checked the zoning map. There was one in the station. That's at Appendix 228. There was one attached to the ordinance. That's also at Appendix 228. He didn't check any of those things. And when he asked Mr. Gerling, is this a commercial or residential street, the very first piece of information that he received on the issue, he was told this is a commercial street. He disregarded it and decided to make the arrest anyway. So I think that even as a separate ground from the home invasion that we have here, there's a no probable cause issue for that parking ticket. Moving to the excessive force claim, unless your honors had any other questions about probable cause. This also, to a large extent, turns on the fact issue about whether or not Mr. Gerling was in his house at the time. We have no dispute here that there is clearly established law that when an officer may not use a taser on a nonviolent suspected misdemeanant who is not resisting or fleeing. So in this case, I think the first two we could check right off. This is a nonviolent suspected misdemeanant. I think that's probably agreed to. The question becomes, was he actively resisting or fleeing under this particular framing of the legal question? And if it is the case, as a factual matter, Mr. Gerling was in his house, had never left and was simply refusing to leave his home for the purposes of a warrantless arrest. He cannot be said to have been fleeing or resisting in any kind of meaningful sense. If he could, the Fourth Amendment would probably mean very, very little as an officer could stand outside of your house, demand that you stop watching television, come out for a warrantless arrest. And when you decline, come inside and taser you. That's that's not the way the Fourth Amendment works. And certainly in this case, in this court's jurisprudence on similar type issues, Duncan, for example, is one important case that comes to mind. That was a case that was very similar to this. And in that case, the the arrestee, quote, stepped farther back into his house. That was part of the fact pattern. And Duncan, it's the same fact pattern here that's being alleged. Mr. Gerling was in his house. And then the fact that he stepped farther back into his house does not constitute fleeing. At the very least, this is a fact issue exactly as the district court had found. And so I think this should go to trial on at least that framing of the law, a nonviolent suspected misdemeanor who's not resisting or fleeing. Even if the court were to believe that that this was a clear flight case, I think that there's still also clearly established law that this sort of behavior where he's moving inside of his house, not threatening the officer, actually withdrawing from the officer. It's not in public. There's no danger of an escalating situation. There's pertinent case law saying that this is to suggest that this is simply too much. Tasing somebody for in this particular situation under the grant factors. So I think to perhaps to sum it up here, a lot of these disputes, very little of this is legal. Maybe none of it is legal. There's literally only factual disputes about whether or not Mr. Gerling was in his house. It's an admitted fact dispute. And the district court here has ruled expressly that this is a legitimate fact dispute should go to trial. And therefore, there's no jurisdiction to revisit that determination. So unless your honors have any additional questions on this, I may yield the rest of my time. Thank you. Do you think that the lawfulness of the force depends on whether the officer was lawfully in the house? Yes. Thank you for bringing that up. I absolutely do. Because the clearly established law under which we're proceeding is that you cannot tase your nonviolent suspected misdemeanor who's not resisting or fleeing. And that third prong, whether or not he's resisting or fleeing, depends on whether or not he's in the house. Now, whether or not the officer had entered the house legally or illegally, I'm not sure if that's necessarily the relevant part of it. That's the part I'm asking about. Because suppose the officer had entered lawfully. Suppose it was a Santana situation. And then the man tried to retreat into another room. The officer arguably would have a basis then to say that he was resisting. And that there was some risk to the officer that the man could access a weapon or something in another room. That's why I wondered if it's relevant whether the officer should have been in the house at all. But if you think that doesn't matter, then maybe you're saying we should analyze it just as though he were lawfully there and we have to decide whether there was resistance. The Santana situation is a little bit different in that the person, the suspect, was in public to begin with and then fled back into their home. And therefore, entry was permitted because this was a hot pursuit. In this case, the dispositive issue is that Mr. Gerling never left his house. And so whether or not the officer was outside the house when he decided to arrest, inside the house legally when he decided to arrest, inside the house illegally when he decided to arrest. It doesn't really matter because what is dispositive here is that Mr. Gerling was inside the protected walls of his house at all times. I don't understand that answer. You say it doesn't matter if the officer was in the house legally. Well, if the officer was in the house legally and trying to make an arrest and then the subject did something that was resistance, the officer may well be allowed to use force. I guess I'll pose that as a question. Wouldn't that be true? Well, I suppose in your hypothetical, we might assume that the officer was invited in for some reason. I will note just at the outset that there's no contention whatsoever that the officer was in the house before he tried to make the arrest, that he was in the house legally. And so as a factual matter, it wouldn't apply to this case in either way. But if he had been invited in and therefore was present legally and was asked to leave and decided not to, I'm not sure what the answer would be, how that would impact. Or if he was in there based on hot pursuit and then there were circumstances that justified the use of force. Right. So if he was in there hot pursuit, that would be a Santana situation. I think that would be controlled by Santana. But I think we don't have that in this particular case. I see that I'm out of time. Thank you for your argument. Absolutely. Thank you. Mr. Bertels, we hear from you a rebuttal. You'll have to turn on your microphone, Mr. Bertels, for us to hear you. I apologize, Your Honors. I wanted to briefly touch on something that Mr. Weinberg mentioned that the court brought up. Mr. Gerling is bound by the petition in this matter, I'm sorry, the complaint in this matter, for count two, which states the claim was for probable cause and violation. Arrest without probable cause, I'm sorry. So they are trying to make this into a different claim than is pled in the complaint. Mr. Weinberg also said there wasn't probable cause for the traffic ticket. That is not correct, as Mr. Gerling pled guilty to that ticket. So he cannot now claim that there was not probable cause for the issuance of it. Mr. Weinberg, I'm sorry. Why not? If he pled guilty, but the officer at the time of the arrest didn't have a basis to arrest him, what's the inconsistency? The inconsistency is you can't claim damages in a 1983 case under Heck v. Humphrey for a charge that would, with your argument, would invalidate the charge that you pled guilty to, in this case, the traffic ticket. He pled guilty to it, so he cannot now claim that it was improper, because that would invalidate the guilty plea that he himself entered to the charge. He could say that I was guilty of it, but Wade had no grounds to arrest me at the time, because he didn't know enough about it to arrest me. I believe he would be precluded from doing that under the doctrine of Heck, Your Honor. Okay. Go ahead. You had one more point you wanted to make, and I interrupted you. No, that's fine, Your Honor. Thank you. One other thing Mr. Weinberg mentioned, he said there was no evidence of an escalating situation. Well, again, we need to put ourselves in the place of an officer at the time and what he would perceive. The officer at the time sees an individual running into his house with two unknown individuals. The officer doesn't know what's going on. Now, with 20-20 hindsight, we know that there probably wasn't a situation that was going to escalate, but that's not how this court looks to that situation. I realize that I'm out of time, so I would ask that this court reverse the denial of qualified immunity by the district court as to counts one and two of plaintiff's complaint. Very well. Thank you to both counsel for your arguments. The case is submitted. The court will file an opinion in due course. Thank you.